Good morning, may it please the court, my name is Robert Epstein, I'm here today on behalf of the appellant, Mr. Antoine Shard. With the court's permission, I'd like to reserve five minutes of my time for reflection. Thank you, Your Honor. The first issue on this appeal is whether the government satisfied its burden below of establishing that the Miranda violation which occurred in this case was not deliberate. We submit that the government didn't satisfy their burden and that as such the district court should have suppressed Mr. Shard's written confession. Now when you look at the record in this case, there's no dispute as to the facts, and we would submit not only did the government not satisfy their burden below, but that when you look at Detective Zantich's testimony, it is clear that the violation in this case was deliberate.  First of all, he testified at page 209 of the appendix that he knew that the men were in custody, Mr. Shard and the other two men. He knew Miranda applied to the encounter, and he knew they had not been Mirandized. Second, he testified that when he approached the men, his intent was to secure a confession. He testified that he was using a technique that he knew from his experience to usually get, as he put it, one of them to mess up. Three, when the prosecutor pointedly asked him, were you trying to violate Miranda here? Were you deliberately looking to violate Miranda? He did not deny it. He did not deny that he was deliberately seeking to evade Miranda. Four, he gave no explanation. He gave no innocent explanation as to why he did not give Miranda warnings at the outset. Number five, as soon as he secured, now I'm back up, number five, he directly asked Mr. Shard, is it true, Mr. Shard, that the marijuana was yours? Seeking to get a confession, and as soon as he got the oral confession, number six, he took Mr. Shard inside, asked him if he would give a formal written confession, took him inside, gave him the Miranda warnings, and secured an admissible confession. When you put all of this together- What did the district court find? The district court found that it was not deliberate, but we would submit that the district court looked at two particular facts, what I would call facts A and B, and made a conclusion of Z. The conclusion of non-deliberateness simply doesn't follow from the two facts that the district court focused on. What is the standard under which we test what the district court found? The standard is set out in United States v. CAM, and under that decision, your review of the district court's legal determinations is plenary. Any legal issues are reviewed, then no vote. Any mixed questions- Is that a legal- Mr. Epstein, just a moment. When Judge Sanchez made the- specifically stated that I do not find this to be deliberate, I find he mistakenly believed his statement was not the equivalent to a question for Miranda purposes. Is that statement that it is not deliberate a finding of fact, or is that a matter of law? That has not been decided by this court yet, and there is a conflict among the circuits. Set out in the Seventh Circuit decision, United States v. Stewart, the Seventh Circuit recognizes there is a conflict as to what standard should be applied to that. I would submit that for our purposes, in this case, the standard of review would not be controlling. You can look at it as a question of law. Did the government meet their burden, which is essentially a sufficiency issue, which is always reviewed- Now, just a moment, Mr. Epstein. I appreciate your zeal, but how can you say that a determination, I find that this was not deliberate, to be a question of law? Well, Your Honor, again, I don't think it would be dispositive, so I don't want to belabor it. But wouldn't that be subject to the gypsum standard of clearly erroneous? Your Honor, I think an argument could be made that the question of deliberateness is comparable to the question of good faith under Leon, and this court reviews the determination of whether an officer acted in good faith under Leon with a de novo standard of review, and I would point the court to the case of United States v. Hodge, 246 F. 3rd, 301, for that proposition. However, I don't want to belabor the point, because I think if the court reviewed this for clear error, clear error did occur here. And I say that because when the district court points to Zantich's testimony that, well, that initial remark I made, I don't view that as a question, I view that as a statement, there's two aspects to that that I think the district court erred. First of all, the detective did not claim, did not testify that he was confused, that he did not understand the law, which has been the law for the last 30 years, that whether it's a statement or a question, it doesn't matter. If it's likely to elicit an incriminating response, Miranda applies. This is a very experienced officer, in fact, he's a detective, and he didn't claim to have any confusion in that regard for purposes of Miranda, and the prosecutor, who had the burden here of eliciting innocent explanation from the detective, did not follow up with him on it. Now, even more importantly, the second aspect of this is, even if the detective had that kind of confusion, which he did not testify to, what did he go on to do? He went on to ask a direct question, Mr. Shard, is the marijuana yours? Is that the truth? And it was that direct question that Mr. Shard responded to with the confession. So even if the detective- Would you tell us, Mr. Epstein, the context in which this disputed conversation or lack of conversation took place? What happened? They were in the van, right? Right. Mr. Shard- Who was in the van? Mr. Shard, Mr. Blackman, and Mr. Smith, all three- And he testified that he didn't want to question him about the gun, because he knew that there had been no Miranda given, didn't he? Correct. Okay. And that is important also, because what that tells us, that doesn't help the government, I would submit, that hurts the government. Because from that testimony, what do we know? We know that the detective knew that they were in custody, knew that Miranda applied, knew that they had not been Mirandized. So the question then becomes, well, why did you question them about the marijuana? If you knew that Miranda applied, you knew that they had not been Mirandized, why would you go ahead and question them without giving them Miranda warnings regarding the marijuana? And the prosecutor never elicited that explanation. And given that it's their burden of proof on this issue, the case is easily resolved on the issue of the burden of proof. But that would only go to the marijuana trafficking conviction. How does this affect the- Would you go back and tell us the context in which this occurred? The context- I would like to answer the question. Yes, absolutely. No, answer Judge Gard's question first. The context was that the three men, Mr. Shard, Mr. Blackman, and Mr. Smith, were arrested. They were detained. They were put in handcuffs. They were taken down to the station. Detective Zantich- They were in the van. They were in the van, outside the station, in handcuffs. Detective Zantich talked to Warrant Officer Zuhl about what had happened. Zuhl gave him the specifics. That was what Zantich's testimony was. I got the specifics of what happened from Zuhl. He then says, all right, let me go talk to them. Let me see what I can get. He goes and he testifies that he's using a technique that he knows is usually going to produce a confession. That's exactly what he does. What happened? What happened in the van? Zantich went up to them and said, basically, it's going to- What did he say? We have a verbatim statement. When it's up to you, I think he said. What he says was, I kind of said, all three of you guys are going to go down for one bag of weed. That's real stupid. Then the response from, not from Mr. Shard, but from the other two men was, Antoine, will you tell them that it's your weed? Fess up. At that point, Zantich, Detective Zantich, specifically questions Mr. Shard directly. Antoine, is that true? Is it your weed? It was only at that point that Mr. Shard confessed. Immediately upon securing that confession, immediately, the detective then says, Antoine, will you come inside and give that to me inside the station? Mr. Shard said, yes. The detective brings him inside the station, gives him the Miranda warnings, and takes the confession all over again. It's the exact same type of two-step interrogation technique that the Supreme Court in Seaver condemned. Judge Vanasky was asking a question, and Judge Garth got in, so I'm going to give Judge Vanasky as much time as he needs to ask this question. What I have trouble understanding is, if we were to agree with you and suppress the second confession, the post-Miranda confession, how does that impact the jury's finding of guilt on the felon in possession charge? Yes, Your Honor. The reason it impacts that was a critical component of the evidence on the felon in possession count was the testimony of the drug trafficking expert, who testified that the gun was possessed in this case for the drugs. The gun goes with the drugs. Maybe I'm misunderstanding the convictions. There were two gun convictions, right? One as a felon in possession. He's disabled from having a gun. And it doesn't matter whether it's in connection with drug trafficking. And the other was in relation to drug trafficking. There was a... So I'm only asking about the felon in possession. I understand, Your Honor. And I apologize for not being clear. The only evidence as to Mr. Shard being in possession of the gun was Warrant Officer Zuhl's testimony that he saw Mr. Shard throw the gun down the basement step. Now, we would submit there were substantial problems with that testimony, two reasons. One, Zuhl said that he only saw Shard with the gun when Shard opened up the basement door, which opens into the kitchen, and Zuhl was at the back door looking through the kitchen, and he saw Shard take out the gun and throw it down. Well, the door partially obscures the view from the back door. So basically, Zuhl was in the position of testifying, and the government does not dispute this, either below or on this appeal. Zuhl was in the position of testifying that Mr. Shard opens the door. He's trying to disassociate himself from the gun, but he basically would have had to step back and pose with the gun for Zuhl to see it. The second troubling aspect of Zuhl's testimony... I don't understand. I'm sorry. Would you go back? I'm not sure that I really understand what you were just explaining. What I'm trying to explain, Your Honor, is why the drug-trafficking expert's testimony that the gun goes with the marijuana is important for the felon in possession. Well, we all know that, I mean, we've had enough of these cases. We all know that it's not unusual to have a gun when you've got drugs. Correct. So, Mr. Shard's confession to the marijuana is important for the gun conviction because the marijuana naturally, as the drug-trafficking expert testified, and as Your Honor points out, the marijuana is associated with the gun. So, once you have Mr. Shard confessing to the marijuana, it's more likely, much more likely that he's going to get convicted for the gun as well. That's a bit tangential. And you think it's just serendipitous or that Zuhl made this up, that he goes down in the basement and sees the gun there after he saw him throw it down there, that he found it there? Unfortunately, this happens, Your Honor, and they were going that day to arrest Mr. Shard. It's not hard to imagine that they find the gun in the basement and decide to attribute it to the person there who they were going to arrest at death. Thank you, Your Honor. Thank you. Good morning, Your Honor. It's David Axelrod for the United States of America. Mr. Axelrod, can you give us a good reason why we shouldn't hold that the second statement was inadmissible? Of course, Your Honor. What appellant is trying to do here is simply to eviscerate the Supreme Court's ruling in United States v. Elstad. In this case, you had a detective come in and testify that he did not think that Miranda applied to the first situation because he was busting chops. He was wrong. There's no doubt about that. But he testified clearly. When I asked him, why did you ask that question, he says, well, it wasn't really a question. I was just busting chops. He messed up. He screwed up. And the district court judge had the ability to evaluate his testimony, evaluate his testimony in the context of the facts, and make a clear decision that he also agreed that the detective screwed up. Why? Go ahead. No, no. You go. Well, Mr. Epstein said that after he got the specifics from warrant officer Zuhl that he then told him, let me see what I can get from them. Did that occur? Is that what the testimony was? The testimony was that he went up to the van because he wanted to bust chops. He wanted to see if somebody would say something. So he wanted to see if they would fess up. What does bust chops mean? I'm sorry. I just don't know the explanation. Your Honor, I think that's a very reasonable question. And based on my presence at that hearing, what Detective Zanitesh, I think, was saying, and I think what you can infer Judge Sanchez found, was that he didn't think he was interrogating the men. He went up there and simply said, it's going to be bad for you, all three of you, to go down for one bag of weed. Our determination, whether he was asking a question that implicates Miranda. Well, actually, I don't think that matters for your determination here. You can clearly find that he was asking a question for Miranda. But the question before you was whether that was deliberate and whether Judge Sanchez clearly erred when he put him up. Well, he knew, he definitely knew that he had not been Mirandized, because he so stated. He certainly did. And he was keeping away from it because he was trying not to get into, I guess it was, I don't know whether it was the, he didn't know about the gun at that time. We don't know if he did or not. But what we do know is that he went up and he made a statement. And he did not think, based on his testimony before Judge Sanchez, that he being Detective Zanitesh should not think that making a statement, that you could not make a statement before you issued Miranda warnings. He was wrong. The government doesn't dispute that. But Judge Sanchez found that that failure to know that was not deliberate. It was a rookie mistake, as they said in Siebert and following cases. Yeah, well, maybe he should have known. There's no doubt about that, that he should have known. He had seven years of experience. He was hardly a rookie. Well, he was a two-year detective, Your Honor. Okay. Well, that's two years on the beat. It's two years being a detective. And as Judge Sanchez knows from seeing tons of Philadelphia police cases, street police officers don't read Miranda to prisoners. It's detectives who issue Miranda rights. So what you've got is a detective who had two years on the job being a detective. He should have known that even the simple process of busting chops required Miranda, but he didn't. And he admitted he didn't. And Judge Sanchez looked at that situation and compared it to what happened later and found that it wasn't deliberate. Well, leaving that aside, you better get to the gun. Well, turning to the gun, the fact is, there is nothing in the confession that would, even if this court found that Judge Sanchez clearly erred, which would require the reversal of the 922G count, the felon in possession count. What you have there is you have Officer Zuhl, who clearly sees Antoine Shared take a gun, toss it down the steps. There is nothing in the record that suggests Zuhl had a motive to lie. He had an opportunity to lie. Nothing suggests that he went in front of Judge Sanchez multiple times and perjured himself. And so if the jury found that testimony to be credible, that's what they convicted on. They didn't convict on some strange and tenuous connection to a confession to a bag of wheat. And then when you top that off, at trial also was admitted was a letter from Antoine Shared to some other woman who said, all they can get me for is this G-dash-dash. He wrote that in a letter that was introduced at trial, and that certainly corroborated Officer Zuhl's testimony about what he saw. I had one other question going back to the confession, and that is, if we were to find that the district court had erred in its conclusion that the Officer Zantac did, that he was acting deliberately, and we find that that's the case, do you concede that the error was not cured? I do not, Your Honor. This case is so starkly different than United States v. Siebert. In Siebert, you had detectives take a woman and essentially cross-examine her until she confessed, then read her Miranda, and then cross-examine her again with her prior statement so she would say everything on the record. What you have here is a brief encounter where one question is asked after a busting-chops period. Detective Zanatic takes Antoine Shared inside, about a half an hour to an hour passes, and Detective Zanatic takes Mr. Shared into a booking room with another detective, issues him a clear Miranda statement where he reads it, he writes it, he says, I agree, I understand, and then they go through an hour-long process of writing a Q&A where Detective Zanatic wrote out the answers, Antoine Shared read them and reviewed them and said, this is correct. Now Justice Kennedy in Siebert said that a portion could be cured simply by a break in time and a break in circumstances. And clearly this is what we have here. This couldn't be further from what happened in Siebert where you have one pre-warned confession followed up by the same post-warned confession in one continuous sequence. So, yes, Your Honor, and quickly just addressing the appellant's burden argument. Judge Sanchez clearly in his ruling, you can infer that he held that the government had the burden. He required the government to put on witnesses. I was there. I examined them. And so I don't think there's any reason to find fault with that portion of the ruling. I also want to quibble with Mr. Epstein on something. And you concede you had the burden. We concede we had the burden. I want to quibble with Mr. Epstein on something. In the appellant's brief, they state that you review factual findings for clear error. And then today we have this first mention of this United States v. Stewart, which isn't mentioned in the appellant's opening brief. The appellant conceded it was clear error for factual findings. And suddenly we now have a shift to a less deferential standard of review, possibly because the appellant realizes that clear error is a pretty tough standard to meet, given the facts of this case. If there are no further questions. Judge Garth. I have none. Thank you very much, Your Honor. Thank you. If we were to reverse on the drugs but affirm on the gun, we'd have to go back for re-sentencing, right? Yes, Your Honor. I'm not saying that's what we do. We haven't even talked to each other. We don't speak to each other. I don't understand that. I would just like to respond to a couple of the statements my friend here made. The first point he made was that Zantich did not believe that Miranda  Well, that's contradicted by Zantich's testimony. Page 209 of the appendix, he testified that he knew the man had not been Mirandized and that he knew Miranda applied to the encounter. Second, with respect to this notion that all Zantich meant to do was to, quote unquote, bust chops, well, that's not what he testified to. Well, that's not all he testified to. He testified that he was using a technique that he knew from his experience. Usually, he said, you tell these three guys this, three guys go down for a little bit of weed, one of them will want to fess up, is what he testified to. So he knew what he was doing. What he was doing was he was trying to get a confession. He wasn't just messing around. This is 1.30 in the morning. Sure, he has better things to do than mess around with three detainees. He was looking to get a confession. That's what he testified to. What happened to the other two guys, by the way? Well, it was interesting because they were held until a formal Mirandized confession was obtained from Mr. Short. It was only at that point that Detective Zantich cut them loose and let them go. Showing again- They weren't charged? They were not charged, but they were held until they got an admissible confession out of Mr. Short. And how long was that? It was only about maybe a half hour, 45 minutes. Okay, that's not very long. It's not very long. And as the detective testified to, it was one very prompt and continuous sequence, getting the first confession and then giving him Miranda warnings and getting the second confession. The detective never testified that he didn't believe, that he didn't know that Miranda applied to statements. And he is not a rookie. This is not a rookie mistake. He's a detective with seven years of experience. So he never made that claim that he doesn't know that Miranda applies to statements. And again, it just doesn't matter. Excuse me? I'd like to ask you a question if I may. Yes, Your Honor. Your friend who just spoke to us made the point that your brief talks in terms of plain error as a standard of review. And yet when you spoke with me earlier this morning, you claimed that this was a standard that was up for grabs. That the Seventh Circuit had determined one standard or hadn't determined it clearly. But that it was not a matter of fact that the district court had found that there was no deliberate intention on the part of Zantac to elicit an un-Mirandaized statement. Could you just explain that for me? Yes, Your Honor. In our, under the standard review section of our brief, what I believe I represented there was that this court has said that it would apply clear error review to findings of fact, plenary review to issues of law. I do not believe I made any statement as to whether the determination of deliberateness would be reviewed as a legal matter or as a legal, as a mixed question of law and fact, which would be reviewed de novo. Or as a factual matter to be reviewed by clear error review. And the reason I wouldn't have made that representation was this court hasn't resolved that issue yet. But I want to be clear in saying that even if this court was to apply clear error review to that issue, I think that we should prevail because I don't, I believe that on this record it is clear error to find that it was not deliberate. Zantac's testimony simply does not support such a determination. But I think the issue could be resolved perhaps most easily just on the question of the burden of proof, which is a legal determination. Thank you, Mr. Erickson. Unless the court has any other questions. Do you have anything to say about the gun or anything more? Yeah, one other troubling aspect of Zul's testimony is that he claimed to see my client throw the gun down the basement stairs is what happened next. What happened next was all of the officers except for Zul run upstairs chasing where they believe Mr. Shard went to. It simply doesn't make sense that if Zul saw Mr. Shard throw the gun down the stairs, and they all testified that as far as they knew there could have been somebody else in the basement who had just gotten the gun that they would have left Zul on the first floor by himself. Mr. Blackman is there, he's already got two detainees on the first floor with him. Now there's possibly someone in the basement with a gun and everybody else is running upstairs. I would submit his testimony just doesn't hold water. And because of that, the drug trafficking expert's testimony becomes critical. That the gun goes with the marijuana. So if you have Mr. Shard confessing to the marijuana, it makes it more likely that the gun does belong to him. The jury's basically in a position of there are three guys found in a house and there was a gun found in the basement. Who does the gun belong to? Once they have a confession from Mr. Shard that the marijuana belongs to me, makes it a lot easier for the jury to think, well, the gun probably belongs to him too. If you remove the confession, now it's the government's burden to establish beyond a reasonable doubt that this confession didn't contribute to the verdict on the gun. And I don't think they've come close to meeting that burden beyond a reasonable doubt. Thank you. Thank you, Your Honor. Do you have any questions?  Judge Barth, do you have any more questions? No, ma'am. Okay, thank you. Thank you, Your Honor. Judge Goss, do you want a break or should we?